# Whether 18 U.S.C. § 603 Bars Civilian Executive Branch Employees and Officers from Making Contributions to a President's Authorized Re-Election Campaign Committee

Civilian employees and officers in the executive branch would not violate 18 U.S.C. § 603, as amended by the Hatch Act Reform Amendments of 1993, by making contributions to a President's authorized reelection campaign committee, so long as such contributions were not made in a manner that would violate the specific prohibitions of 5 U.S.C. §§ 7324(a)(1)–(4).

May 5, 1995

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion with respect to whether 18 U.S.C. § 603 would bar civilian executive branch employees and officers from making contributions to a President's authorized re-election campaign committee. For the reasons expressed below, we conclude that such employees and officers would not violate § 603 by making such contributions, without more.

## I.

Between 1980 and 1993, 18 U.S.C. § 603 provided as follows:

> (a) It shall be unlawful for an officer or employee of the United States or any department or agency thereof, or a person receiving any salary or compensation for services from money derived from the Treasury of the United States, to make any contribution within the meaning of section 301(8) of the Federal Election Campaign Act of 1971 to any other such officer, employee or person or to any Senator or Representative in, or Delegate or Resident Commissioner to, the Congress, if the person receiving such contribution is the employer or employing authority of the person making the contribution. Any person who violates this section shall be fined not more than $5,000 or imprisoned not more than three years, or both.
>
> (b) For purposes of this section, a contribution to an authorized committee as defined in section 302(e)(1) of the Federal Election Campaign Act of 1971 shall be considered a contribution to the individual who has authorized such committee.

*See* Federal Election Campaign Act Amendments of 1979, Pub. L. No. 96–187, § 201(a)(4), 93 Stat. 1339, 1367 (1980).

103

As this Office explained in a 1984 Memorandum to the Counsel to the President, it was far from clear whether this iteration of § 603 did, or constitutionally could, bar all executive branch employees from making contributions to a President's re-election campaign committee. *See* Memorandum for Fred F. Fielding, Counsel to the President, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Application of 18 U.S.C. § 603 to Federal Employee Contributions to the President's Authorized Re-election Campaign Committee* (Feb. 6, 1984) ("1984 Olson Memo"). We concluded that "[s]erious uncertainty exists concerning whom the statute covers, under what circumstances it was intended to be applicable, and why it was promulgated." *Id.* at 2. In particular, it was uncertain whether the use of the phrase "employing authority" in § 603 was so broad as to proscribe contributions to a President's reelection campaign by *all* executive branch employees; given the President's constitutional authority as Chief Executive and as Commander-in-Chief, a plausible reading of the language of § 603 could have prohibited most, if not all, of the more than five million executive branch employees and military personnel from making such contributions. *See id.* at 6, 33. The ambiguity of § 603's coverage was exacerbated by the fact that there has never been a reported prosecution under § 603 or its predecessor statutes,[1] and by the absence of any determinative legislative history concerning application of § 603 in the executive branch. *See id.* at 18.

In his statement upon signing into law the legislation creating the "employing authority" version of § 603, President Carter stated that the prohibition would cause a "severe infringement of Federal employees' first amendment rights." 1 Pub. Papers of Jimmy Carter 37, 37 (1980). President Carter characterized § 603 as "an unacceptable and unwise intrusion" on the First Amendment rights of federal employees that "raises grave constitutional concerns." *Id.* at 38. Accordingly, he urged that § 603 "be promptly repealed or amended so as to remove its chilling effect on the rights of citizens to make voluntary contributions to the candidates of their choice." *Id.* The chief sponsors of the 1980 revision of § 603 attempted to assure President Carter that the statute was not intended to impose such a broad prohibition, *see* 1984 Olson Memo at 18–20; nevertheless, prior to 1993, Congress failed to repeal the statute or amend it to reflect the narrow scope described and intended by its sponsors.

This Office also was of the opinion that, if former § 603 were read to proscribe contributions to a President's campaign from all (or virtually all) executive branch employees, it would in all likelihood be unconstitutional. *See id.* at 35. Therefore, we opined that the statute would best be interpreted more narrowly, so as to avoid such possible constitutional infirmities. *Id.* at 35–39. In particular, we reasoned that

---

[1] The Criminal Division has informed us that it is unaware of any prosecutions ever being brought under § 603.

the constitutional considerations which bear upon the phrase "employer or employing authority" as applied to the President require that the phrase be construed narrowly to apply only to those persons in Government service who may reasonably be expected to be subject to some form of subtle pressure to contribute to the President's re-election committee because of the President's status as their immediate "employer or employing authority."

*Id.* at 36; *see also id.* at 3.[2]

Despite this conclusion, we nonetheless warned that "it is by no means certain that a court would adopt a construction of § 603 which prohibited contributions only when made by the President's 'inner circle' of political appointees." *Id.* at 39. And, because we were "unable to predict with confidence precisely how the statute would be construed by the courts," *id.* at 42, the White House consistently has advised executive branch employees not to contribute to a President's re-election campaign. *See, e.g.,* Memorandum for the Heads of All Departments and Agencies, from C. Boyden Gray, Counsel to the President, *Re: 18 U.S.C. § 603* (Nov. 15, 1991) ("regret[fully]" advising employees that though a broad reading of § 603 "would raise grave constitutional concerns, prudence requires that any ambiguity in the language of this statute be resolved against placing any Presidential appointee or other Federal employee in the position of inadvertently violating Federal law").

## II.

As part of the Hatch Act Reform Amendments of 1993 ("HARA"), Congress added a new subsection (c) to § 603. Pub. L. No. 103–94, § 4(b), 107 Stat. 1001, 1005. 18 U.S.C. § 603(c), which became effective on February 3, 1994, *see* HARA § 12(a), 107 Stat. at 1011, provides that

[t]he prohibition in subsection (a) shall not apply to any activity of an employee (as defined in section 7322(1) of title 5) or any individual employed in or under the United States Postal Service or the Postal Rate Commission, unless that activity is prohibited by section 7323 or 7324 of such title.

Congress's evident intent was to "conform" § 603 to the Hatch Act, so that employees subject to the Hatch Act could not be convicted under § 603 for

---

[2] We further explained that, under such a circumscribed reading, a "reasonable expectation of such political pressure could be argued to exist as a result of three elements in an employment relationship involving the President: (1) the President personally appoints the contributor, or employs him pursuant to his discretionary authority under 3 U.S.C. § 105, (2) the President personally supervises the performance of the contributor; and (3) the contributor works in an office involved with the political activities of the President." *Id.* at 36–37.

engaging in activities that are not prohibited by the civil provisions of the Hatch Act itself. *See, e.g.,* S. Rep. No. 103–57, at 15–16 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1802, 1816–17.

For present purposes, this restriction on the scope of the prohibition in § 603(a) raises but two questions: (A) which employees and officers may be subject to the limitation in § 603(c); and, (B) with respect to those employees and officers who are covered by § 603, whether such persons might violate the civil provisions of the HARA, 5 U.S.C. §§ 7323 and 7324, by making contributions to a President's re-election campaign committee.

A. In addition to individuals "employed in or under the United States Postal Service or the Postal Rate Commission," to whom § 603(c) makes explicit reference, § 603(c) covers all persons who are defined as "employees" under the HARA, 5 U.S.C. § 7322(1). Section 7322(1) reads:

> "[E]mployee" means any individual, other than the President and the Vice President, employed or holding office in —
>
> > (A) an Executive agency other than the General Accounting Office;
> > (B) a position within the competitive service which is not in an Executive agency; or
> > (C) the government of the District of Columbia, other than the Mayor or a member of the City Council or the Recorder of Deeds;
>
> but does not include a member of the uniformed services.

Because this definition includes all employees in "Executive agenc[ies]," it includes in its scope (but is not limited to) all executive branch employees and officers, with the exception of the President, the Vice President, persons employed in or under the United States Postal Service or the Postal Rate Commission, and members of the uniformed services.[3] Section 603 by its terms does not bar the President and the Vice President from making contributions to their own campaign committee, and § 603(c) explicitly includes within the scope of its exception persons "employed in or under the United States Postal Service or the Postal Rate Commission." Therefore, § 603(c) applies to the entire executive branch with the

---

[3] Section 7322(1) refers to employees in "an Executive agency." "Executive agency" is defined in 5 U.S.C. § 105 to include "Executive department[s]," "Government corporation[s]," and "independent establishment[s]." The "Executive department[s]" are defined in 5 U.S.C. § 101 to include all Cabinet-level agencies "Government corporation[s]" are defined in 5 U.S.C. § 103 to include corporations owned and/or controlled by the United States. An "independent establishment" is defined in 5 U.S.C. § 104(1) to mean, inter alia, "an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." We do not in this Opinion address whether any particular entity or establishment is "in the executive branch" for purposes of title 5.

possible exception of members of the uniformed services.[4] Therefore, the prohibition in § 603(a) does not apply to any activity of such persons unless that activity is prohibited by 5 U.S.C. §§ 7323 and 7324.

B. There is nothing in §§ 7323 and 7324 that bars executive branch employees and officers from making contributions to a President's re-election campaign committee, without more. Indeed, the Hatch Act itself has never barred such action. Prior to the HARA, the Office of Personnel Management ("OPM") interpreted the Hatch Act to permit employees to make financial contributions to a political party or organization. *See* 5 C.F.R. § 733.111(a)(8) (1994) (pre-HARA regulations).[5] Subsequent to the HARA, OPM has reiterated this regulation, and explicitly has added that an employee may make a contribution to a campaign committee of a candidate for public office. *See* 5 C.F.R. §§ 734.208(a), 734.404(d) (1995) (post-HARA regulations).

Therefore, because an executive branch employee or officer would not violate § 7323 or § 7324 simply by making a contribution to a President's re-election campaign committee, it follows that, pursuant to 18 U.S.C. § 603(c), such an executive branch employee or officer (other than a member of the uniformed services) would not violate the criminal prohibition found in § 603(a) simply by making such a contribution.

## III.

Two caveats should be mentioned. First, there is one conceivable (albeit unlikely) circumstance under which the making of a contribution to a President's campaign committee might violate § 7324, and therefore be subject to criminal sanctions under 18 U.S.C. § 603. Congress indicated in section 4 of the HARA, 107 Stat. at 1005 (creating 18 U.S.C. § 610) that "mak[ing] . . . any political contribution" is "political activity."[6] Thus, making a contribution to a President's re-election campaign committee is "political activity" under the HARA. Under § 7324, almost all HARA-covered employees may not engage in "political activity": (i) while on duty; (ii) while in "any room or building occupied in the

---

[4] We do not address herein the status of members of the uniformed services under § 603. We simply note that, if § 603(c) does not apply to members of the uniformed services, then the discussion in the 1984 Olson Memo concerning the ambiguity, constitutionality, and possible limiting constructions of § 603 would continue to be of relevance with respect to such persons.

[5] This interpretation conformed to the regulation promulgated by the Civil Service Commission ("CSC") at the dawn of the Hatch Act in 1939. *See CSC v. National Ass'n of Letter Carriers*, 413 U.S. 548, 584 (1973) (quoting CSC Form 1236, "Political Activity and Political Assessments of Federal Officeholders and Employees," § 17, at 7 (1939)). Congress effectively adopted this 1939 CSC regulation as a substantive part of the Hatch Act itself. *See* Memorandum for James B. King, Director, Office of Personnel Management, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Whether Use of Federal Payroll Allocation System by Executive Branch Employees for Contributions to Political Action Committees Would Violate the Hatch Act Reform Amendments of 1993 or 18 U.S.C. §§ 602 and 607*, at 17–19 (Feb. 22, 1995) ("1995 Dellinger Memo").

[6] "[P]olitical contribution," in turn, is defined to include "any gift . . . or deposit of money or anything of value, made for any political purpose." 5 U.S.C. § 7322(3)(A); *see also* 1995 Dellinger Memo at 25–28 (discussing Congress's obvious intent that "political activity" be read as broadly as possible).

discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof''; (iii) while wearing a uniform or official insignia identifying the employee's office or position; or (iv) while using any vehicle owned or leased by the federal government. 5 U.S.C. § 7324(a)(1)–(4).[7] It follows that an executive branch employee covered under § 7324(a) could violate that provision by making a contribution to the President's campaign committee while on duty or while in a federal building — for example, by hand-delivering a contribution to another federal employee who is an officer of that committee. In the unlikely event of such a violation of § 7324, the employee could be subject to the criminal sanctions of § 603, as well.

Second, it should be kept in mind that, even where § 603 does not bar executive branch employees and officers from making political contributions, nonetheless there remain limitations on the solicitation of such contributions by federal employees and officers and by the President. *See, e.g.*, 5 U.S.C. § 7323(a)(2), 18 U.S.C. §§ 602, 607.[8] This Opinion does not address the scope of those solicitation limitations.[9]

## CONCLUSION

Civilian employees and officers in the executive branch would not violate 18 U.S.C. § 603, as amended, simply by making a contribution to a President's authorized re-election campaign committee, without more.

DAWN JOHNSEN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7] An exception to these prohibitions is made for certain employees ''the duties and responsibilities of whose position[s] continue outside normal duty hours and while away from the normal duty post,'' and who are either (i) ''employee[s] paid from an appropriation for the Executive Office of the President'' or (ii) ''employee[s] appointed by the President, by and with the advice and consent of the Senate, whose position[s] [are] located within the United States, who determine[] policies to be pursued by the United States in relations with foreign powers or in the nationwide administration of Federal laws.'' 5 U.S.C. § 7324(b)(2). Such employees ''may engage in political activity otherwise prohibited by subsection (a),'' 5 U.S.C. § 7324(b)(1), such as political activity on duty, but only ''if the costs associated with that political activity are not paid for by money derived from the Treasury of the United States.'' *Id.*

[8] *See* 1995 Dellinger Memo at 7–12 (discussing the meaning of ''solicit'' in these statutes).

[9] One clarification is worth brief mention, however. Though 18 U.S.C. § 602(a)(4) prohibits the President, as well as other federal employees, from knowingly soliciting political contributions from other federal officers and employees, Congress intended that ''[i]n order for a solicitation to be a violation of this section, it must be actually known that the person who is being solicited is a federal employee''; thus, ''[m]erely mailing to a list [that] no doubt contain[s] names of federal employees is not a violation of [§ 602].'' H.R. Rep. No. 96–422, at 25 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2860, 2885.